UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 21-CR-30001-DWD |
| vs. | ) | |
| | ) | |
| | ) | |
| KENDRICK FRAZIER, and | ) | |
| KENWYN FRAZIER | ) | |

**DEFENDANTS' MOTION TO RECONSIDER DISQUALIFICATION OF COUNSEL**

COME NOW the defendants, KENDRICK FRAZIER and KENWYN FRAZIER, by and through their attorney, Beau B. Brindley, and respectfully move this Honorable Court to reconsider its order disqualifying the undersigned and his firm from serving as their counsel in this case. In support, they state as follows:

**Procedural Background**

On March 8, 2021, the undersigned filed motions to substitute as counsel for both Kendrick Frazier and Kenywn Frazier in this case. Dkt. 98, 99. The government filed a memorandum regarding the potential conflict of interest entailed by the proposed joint representation of the defendants in this case on March 15, 2021. Dkt. 106. Defendants filed a response on March 17, 2021, indicating that the potential conflict was waivable and that the Court should accept the defendants' proffered waivers following a hearing in which the Court ensured the defendants were informed of the risks of dual representation. Dkt. 107. On March 26, 2021, the Court appointed attorney Talmege E. Newton IV to meet with each defendant and advise them on the potential for conflicts of interest posed by joint representation. Dkt. 113.

On April 14, 2021, the Court held a hearing on the motions to substitute counsel, at which each defendant was placed under oath and offered an oral waiver of his right to conflict-free counsel. Transcript at Dkt. 132. After hearing testimony from the defendants and arguments from

counsel, the motions to substitute were denied. The Court followed up its oral ruling with a written memorandum detailing its reasons for rejecting defendants' waivers and denying the motions to substitute. Dkt. 129.

**Argument**

Defendants Kendrick Frazier and Kenwyn Frazier now move this Court to reconsider its denial of their motion to be represented by the undersigned, their counsel of choice, and its rejection of their waivers of their right to conflict-free counsel. Defendants contend that the Court's decision was a misapplication of the law and an abuse of discretion that constitutes a structural error.

The Court's analysis of the issues attendant to the joint representation issue in this case was flawed and, if uncorrected, will result in an erroneous deprivation of the defendants' right to be represented by counsel of choice and a violation of the Sixth Amendment.

The long-prevailing rule in the Seventh Circuit is that "a judge is to inform a defendant of the character and importance of his right to conflict-free counsel and guarantee that the defendant comprehends the consequences of a conflict as well as his entitlement to conflict-free counsel." *United States v. Colonia*, 870 F.2d 1319, 1327 (7th Cir. 1989). "While more extensive discussions may be valuable and are encouraged, it suffices that a defendant know the character of the risks at stake and proceed with his eyes open." *Id.* (*citing United States v. Roth*, 860 F.2d 1382, 1388–89 (7th Cir.1988)). As noted in the Court's written opinion (Dkt. 129 at 3), Federal Rule of Criminal Procedure 44(c)(2) requires that "The court must promptly inquire about the propriety of joint representation and *must personally advise* each defendant of the right to the effective assistance of counsel, including separate representation." (emphasis added).

It is important that each defendant be "fully advised of the facts underlying the potential conflict and is given an opportunity to express his or her views." Fed.R.Crim.P. 44 Advisory Committee Notes (*citing United States v. Alberti*, 470 F.2d 878 (2d Cir. 1973)). The rule specifically requires that the court personally advise each defendant of his right to effective assistance of counsel, including separate representation, and make a determination that jointly represented defendants "understand that they may retain separate counsel, or if qualified, may have such counsel appointed by the court and paid for by the government." *Id.* (*citing United States v. Foster*, 469 F.2d 1 (1st Cir. 1972)).

As the Court noted, here, "the Court recruited outside appointed counsel through the Federal Defender's Office to advise Defendants, separately, on several issues related to the risks and inherent dangers of joint representation." Dkt. 129 at 3.

With respect to the Court, while recruiting this outside counsel to advise the defendants is a prudent and an important step, it does not absolve the Court of its duties under Rule 44(c)(2) to *personally* advise the defendants of the rights associated with joint and separate representation. Here, the Court did not inquire of the appointed counsel about what had occurred during his conversations with the defendants, or whether adequate information was conveyed, until *after* it had already rendered a decision rejecting the defendant's waivers and disqualifying their counsel of choice. See 4/14/2021 Tr. (Dkt. 132) at 22. What the Court did do was a very limited inquiry of the defendants, following their examination by counsel. This inquiry was wholly insufficient to discharge the Court's duties under the Rules for explaining the relevant rights to the defendants and for supporting the Court's conclusion that waivers were not being knowingly or intelligently made.

Regarding Kendrick Frazier, the Court asked the following questions: (1) Whether appointed Counsel Talmage Newton came to visit him; (2) Whether Newton did all the talking; (3) Whether Kendrick Frazier asked Mr. Newton no questions; (4) Whether there was anything about what Newton told him that he had a question about that day in court; (5) Whether he had a full understanding of what can happen if there is a conflict of interest during trial; and (6) Whether that awareness also included the possibility that there might be a piece of evidence that became known during trial that counsel could not bring out because of the conflict. Tr. at 9-10. These six yes-or-no questions constituted the entirety of the Court's dialogue with Kendrick Frazier. The Court did not provide any information to Kendrick Frazier about the nature of the potential conflict or its consequences. Instead, it provided only a single example of what conflict might arise later. It offered no explanations of the right to counsel of choice, the right to conflict free counsel, or how those rights could be impacted in the case of either waiver or non-waiver. It seemed to rely wholly on the contents of the conversation between Mr. Newton and Kendrick Frazier that occurred prior to the hearing, though the Court never established what information may have been conveyed to Kendrick Frazier during that conversation. Hence, the Court's entire discussion with Kendrick Frazier lacked any explanation of what specific information was provided to Mr. Frazier regarding the nature of the potential conflict and the rights to counsel of choice, conflict-free counsel, and effective assistance of counsel. As a matter of law, that inquiry was simply not sufficient to allow for any meaningful acceptance or rejection of a waiver of potential conflict.

Regarding Kenwyn Frazier, the Court's inquiry was a bit more robust, requesting that Kenwyn Frazier restate his own understanding of what a conflict of interest is, asking whether he realized that could affect the outcome of the case, and whether he had thought through the fact

that unknown developments could occur during trial that could place his counsel in a conflict situation. Tr, at 13-14. While these questions came closer to following the requirements of Rule 44(c), they still fall short of the requisite explanation of the rights in question and associated risks, which the Rule, Advisory notes, and relevant case law require. This failing is startling in light of the Court's decision being based in part on its determination that the defendants did not have a knowing and intelligent understanding of the rights they were giving up. Defendants maintain that they do have that understanding. But if such an understanding was lacking, that resulted from a legally insufficient colloquy from the Court. Through a complete and proper colloquy, the Court would ensure the defendants' understanding of the rights involved, the associated risks, what a waiver in this situation means, and what the potential consequences of that waiver are. Without that required discussion, any finding that the defendants' waivers were not knowing an or unintelligent stems from the Court's failure to sufficiently advise them such that they could assess whether to make a knowing and intelligent waiver.

Curiously, the Court's failing may have been an excusable one if the Court had instead accepted the defendants' proffered waivers. "A defendant can waive the right to conflict-free counsel and, "once having made a knowing and intelligent waiver, a criminal defendant may not later attack his conviction premised upon an assertion of conflict." *United States v. Lowry*, 971 F.2d 55, 60 (7th Cir. 1992)(*citing United States v. Beniach*, 825 F.2d 1207, 1210 (7th Cir.1987). A waiver is said to be knowing and intelligent if made with "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). "The right question ... is not whether the judge told the defendant everything. No choice of any kind is made with perfect information, and hindsight always turns up some additional snippet. The question is whether the defendant knew enough to make the choice an informed one—a rational

reconciliation of risks and gains that are in the main understood. A choice may be intelligent and voluntary in this sense even though made without potentially-important information." *United States v. Roth*, 860 F.2d 1382, 1387-88 (7th Cir.1988). *See also Bridges v. United States*, 794 F.2d 1189, 1194 (7th Cir.1986) ("The waiver of constitutional rights, in general, may be effective even without specific knowledge of all the implications.") "Extended colloquys are not ... necessary conditions of valid waivers." *Roth*, 860 F.2d at 1389. Hence, when the right to counsel of choice is protected by waivers, those waivers can and are upheld even with technically insufficient colloquies from the Court. On the other hand, erroneous failure to accept the waiver is a structural error compelling automatic reversal. *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). In the face of a knowing and voluntary pretrial waiver following advisal by the Court, it is veritably impossible for a case to be reversed on appeal on the basis of conflict of interest. As it stands now, the Court has injected a structural error into this case.

Here, the Court believed that the defendants' expressions of their desire to pursue joint representation came in the form of responses that "were perfunctory and rote," and that neither defendant could "explain in his own words, even on a basic level, what they were giving up by waiving their rights to conflict-free counsel or what risks were involved in such a decision." Dkt. 129 at 4-5. The Court's lack of concern for the defendant's right to counsel of choice flies in the face of the above-cited cases, which plainly validate waivers of conflict. Again, if the Court believed the defendants' understanding of the technical, legal definitions of the rights were required in order for their waivers thereof to be knowing and intelligent, it was the Court's duty to ensure they had that understanding, not the defendants' burden to supply it. The undersigned has engaged in many conflict-of-interest colloquies with defendants in federal district courts across the country. Yet, never has he observed a Court seemingly look to the defendants to

prove their knowledge of the potential conflict and its ramifications without the Court, itself, advising them in detail to ensure their understanding is accurate and allowing them to make a fully informed decision regarding waiver.

Moreover, as the above-cited cases illustrate, no such technical understanding regarding conflict of interest is required. Further, the Court has not explained how Kenwyn Frazier's explanation was in any way lacking when he responded to the Court's inquiry that "Basically, what a conflict of interest is that it may come down to a point where one attorney interests may lie more in the other defendant and the other defendant may suffer from that, so it's going to cause a conflict by you having the same attorney." *See* Tr. at 13. This further demonstrates a thorough grasp on the issues for a layman who was deprived of any of the requisite personal instruction by the Court. This waiver was plainly offered with an understanding of the risks it entailed and should have been accepted as knowingly and intelligently made.

The Court also found that, even if the waivers had been made knowingly and intelligently, there are serious potential conflicts present here that rebut the presumption in favor of defendants' choice of joint representation. Dkt. 129 at 5. The Court's proffered reasons for this are not in line with relevant case law and, in some instances, the fundamental principles of our criminal justice system.

The Court acknowledges, perfunctorily, that potential cooperation alone is not grounds for overriding a waiver. Dkt. 129 at 5, *see United States v. Turner*, 594 F.3d 946, 953 (7th Cir. 2010). However, the Court also finds that "with the potential for the death-penalty looming over these proceedings, an attorney jointly representing Defendants cannot provide conflict-free advice on whether to pursue or to accept an offer to cooperate." Dkt. 129 at 5.

This concern is baseless for multiple reasons. First, even if death-eligible charges may be filed at a later time, the possibility that the Government would pursue the death penalty is speculative and should not be considered at this juncture, without any indication whatsoever from them that it will actually come to pass. Moreover, there is no reason a possible death penalty charge would have any impact on whether or not counsel can provide conflict-free advice on whether or not to plead guilty for either defendant, especially when both have specifically expressed their desire to proceed to trial and ardent opposition to cooperation.

But the Court takes it one step farther, declaring that "such a resolute decision to proceed to trial at this juncture suggests — particularly given that it was reached so early in the case, before vast amounts of discovery has been fully reviewed and understood and before being made aware of the nature of charges which have yet to be filed — that the Defendants do not have a full appreciation for the near certainty that conflict will arise and that it is likely to affect them or one of them negatively." Dkt. 129 at 5-6. The court fails to consider that "such a resolute decision to proceed to trial" might well be based on each defendant's actual innocence of both the charges that actually have been brought (the only ones currently relevant to these proceedings) *and* whatever speculative charges *might* be brought at some future time. Innocent defendants, of course, have a right to decide to go to trial no matter what, regardless of how much of the discovery they have reviewed or what charges they may be threatened with in the future. However, the defendants' factual innocence is not even relevant to this issue. In what should not be a controversial idea to the Court, this same right is extended to charged defendants who are factually guilty of their charges as well in the American justice system. Guilty or innocent, defendants' decisions on whether to proceed to trial is a personal one that only they have the right to make, with the advice of their counsel of choice. With their stated desire to

proceed to trial and not to cooperate, there is absolutely nothing about this case that renders counsel incapable of providing appropriate advice to each defendant and the Court's declaration that there is a "near certainty that conflict will arise" is misplaced and without justifiable support. There is no such certainty. There is a potential, a speculative possibility. Under the known facts, that is all that can reasonably be said. The Court goes too far and assumes too much about the case, the evidence, and the defendants in claiming a "near certainty" when, in reality, speculative possibility is all that exists. The potential for conflict here does not rise to that level. Nor does it rise to a level sufficient to justify a rejection of waivers and an infringement on defendants' right to representation by counsel of choice. And the idea that this Court somehow knows what charges will be brought in the future, without any pronouncement that they will be, renders this entire analysis logically flawed and a mistake of law.

In *Turner*, 594 F.3d at 953, the Seventh Circuit made it perfectly clear. The speculative possibility of one defendant cooperating against another in the future is absolutely not a sufficient basis on which to deny a defendant his counsel of choice. The Court's order gives no explanation for, and certainly cites no authority in support of, the notion that the speculative possibility of a future death penalty charge would somehow change the Seventh Circuit's finding that the speculative possibility of future cooperation of one defendant against another is not grounds to deny counsel of choice. At its core, the Court's order is based on what it believes to be the possibility that one of these defendants might choose to cooperate against the other at some point in the future, possibly motivated by the additional speculation that a death penalty charge could one day be brought. If the Court means to say that the Seventh's Circuit's findings that the speculative potential for future cooperation is not sufficient to deny counsel of choice is somehow changed by the speculative potential of a charge that has never been brought in the

case, then it needs to cite some authority for that proposition. There is no such authority. The Sixth Amendment right to counsel of choice, in light of the Seventh Circuit's decision in *Turner*, cannot be violated by speculation about future cooperation or charges that are yet to be brought. Yet, those two things are all the Court cites. In light of *Turner*, the Court's finding is a mistake of law and, consequently, an abuse of discretion.

The Court repeats its unwarranted assumptions throughout its opinion. The Court declares that, because defendants are *alleged* to have been present together for a large portion of the charged crime, "Effective representation through trial and sentencing, if convicted, likely will require one or both defendants to argue he has less culpability than the other." Dkt. 129 at 6. The Court should not insert itself into the role of advocate here. The Defendants' counsel, whether it is the undersigned or some other attorneys, will decide what effective representation strategies to employ at trial and, if necessary, at sentencing. The Court should not attempt to predict what the defendants' defense strategies will or "should" be. Indeed, if the Court believes the specific defense strategies of the defendants are relevant to its determination of the likelihood of conflict developing, the Advisory Committee Notes tell the Court exactly what to do: "It is contemplated that under rule 44(c) the court will make appropriate inquiry of the defendants and of counsel regarding the possibility of a conflict of interest developing. Whenever it is necessary to make a more particularized inquiry into the nature of the contemplated defense, the court should 'pursue the inquiry with defendants and their counsel on the record but in chambers' so as 'to avoid the possibility of prejudicial disclosures to the prosecution.'" Fed.R.Crim.P. 44 Advisory Committee Notes (*citing United States v. Foster*, 469 F.2d 1 (1st Cir. 1972)). The Court made no effort to identify any more particularized concern or address it as the Committee Notes dictate. Again, this is a mistake of law. Regardless of what the government indicates about the disparity of

evidence or culpability between the defendants, the Court should not base its decision on a speculation about what the defense will be for either defendant or what the evidence against each will be. As noted above, there is no authority supporting that kind of evaluation of a defendant's desire to waive potential conflict of interest and be represented by counsel of choice.

"Trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." *Cuyler v. Sullivan*, 446 U.S. 335, 346–47 (1980). As the Supreme Court noted in *Holloway v. Arkansas*, 435 U.S. 475, 485-86 (1978), trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel. "An attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." *Id.* Under the circumstances of this case, the undersigned has no misgivings whatsoever about representing these two defendants who seek to profess their innocence at trial. Per the Supreme Court's dictate, this Court should largely rely on that, not on speculation about what theories of defense might be possible.

The Court's concern that the defendants "are not equally yoked, nor will they be at the time of trial," Dkt 129 at 6, also has little bearing on the issue of waivability. The undersigned is quite familiar with the procedures and potential pitfalls involved in multiple representation scenarios with defendants who are not similarly situated. In the Northern District of Illinois, the undersigned represented both Richard Harrington and Rahshone Burnett, who were each indicted as co-conspirators in case 09 CR 814 with Harrington alleged to be the leader of a large-scale heroin conspiracy (the charges against Mr. Burnett were later brought in related case 09 CR 1030, with Mr. Harrington as a named co-conspirator). After inquiry by the court, and waivers from each defendant, the undersigned was permitted to represent both defendants at their

respective trials. Mr. Harrington was further called as a witness during the defense case in Mr. Burnett's trial. No actual conflict was found and any potential conflict was determined to be waivable despite these unique circumstances.

Similarly, the undersigned represented both Anthony Santiago and Pedro Salas, indicted co-conspirators in ILND cases 12 CR 383 and 12 CR 384, in their respective trials. There, the government explicitly made the same argument as concerns the Court here, that due to the seriousness of the charges and potential penalties, one of the defendants could in the future decide to cooperate and testify against the other, and that this could create a conflict of interest. The same concerns about relative culpability at sentencing existed. However, the court there properly acknowledged that this constituted only a potential conflict of interest and that the defendants could waive it if properly advised. The Court provided that advice. The defendants then indicated their desire to waive potential conflict, and the court accepted their waivers, each proceeding to trial.

Later, in 12 CR 383, a superseding indictment added money laundering conspiracy charges against both Anthony Santiago and his sister Damaris Santiago, whom Anthony was alleged to have led in a conspiracy to funnel drug proceeds through their logistics business. Damaris Santiago also retained the undersigned to represent her. The court conducted the required conflict inquiry, fully advised each defendant, accepted their waivers, and permitted the undersigned to represent both codefendants at their joint trial. The same incentives that concern the Court here were amply present in that joint representation. Yet despite the drastic disparity in the severity of the evidence against the two defendants and their relative culpability, the potential conflict was properly found to be waivable.

The undersigned also represented co-defendants during the same trial in ILND case 16 CR 174, Nikolai Tantchev and Batmagnai Chogsom. Just as in the other cases outlined above, the Northern District of Illinois court considered the possibility that dual representation could potentially create a conflict of interest, including under the circumstance that one defendant might decide to testify against the other in the future. There, as in each other case, the defendants were appropriately advised by the Court, given the opportunity to ask questions and consult with independent counsel, and allowed to knowingly and intelligently waive their right to conflict-free counsel. Both proceeded to a joint trial represented by the undersigned.

The undersigned also represented co-defendants, Rahshone Burnett and Lutisha Lee in ILND case 11 CR 571. There, Burnett was alleged to be the leader of a fraud scheme in which Lee was a minor participant who took directions from Burnett. The disparity in culpability was significant. Yet, the Court instructed both defendants in detail on the risks of joint representation, appointed independent counsel to do the same, and accepted their waivers.

In ILND case 26 CR 588, the undersigned represented co-defendants, Marvin Jones, Sr. and Angela Wansley at a joint trial. There, Jones was accused of mishandling various mail parcels and of directing Wansley to assist him in that pursuit. Despite a disparity in terms of both evidence and relative culpability, the Court fully advised each defendant regarding the potential conflict, gave them the opportunity to consult with independent counsel, and accepted their waivers of conflict. They proceeded to a joint trial with the undersigned as their counsel.

Recently, the Eastern District of Missouri also accepted waivers from two of the undersigned's clients indicted as co-conspirators in case 4:17-cr-00198: Gerald Hunter, who is alleged to have been the head of a large-scale cross-country drug trafficking organization, and Raina Madison, who is alleged to have worked for him as a courier. Despite the government's

arguments that the disparity in evidence rendered the risk of serious conflict severe because of assumed cooperation on the part of Madison, the court accepted waivers from each defendant and permitted the undersigned to represent each. Mr. Hunter will proceed to trial later this year with the undersigned as his counsel. Ms. Madison reached a very favorable agreement with the government that required no cooperation whatsoever.

None of these cases presented any less of a potential conflict than that at issue in this case. Most of the listed defendants discussed above had at least as much incentive to cooperate against their co-defendants as either Kendrick Frazier or Kenwyn Frazier. Each was informed that if they changed their mind about cooperation in the future, or if their co-represented co-defendant did, their chosen counsel might have a conflict of interest from divided loyalty. Each was allowed to waive the potential conflict despite those possibilities. So too must be the defendants in this case. There is no sense in which all of these Courts, each presented with the very same issue that is now before this one, somehow uniformly made the wrong decision in the exact same way. Instead, what these Courts did was follow the dictates of the case law and the rules, personally advise the defendants on the nature of the potential conflict and its consequences, and accept waivers following that colloquy. The pure speculation of this Court about what may or may not happen in the future is not sufficient to separate this case from others where the opposite decision was repeatedly reached under substantially similar facts.

The Court's reasoning underlying its decision to refuse to accept waivers here relies on assumptions that are both baseless and inappropriate. The Court assumes that "If this case proceeds to trial, effective advice as to whether each defendant should testify cannot be given in the case of joint representation because both defendants were present for all or most of the acts charged." Dkt. 129 at 6. This factual allegation about defendants participating together in central

events that were allegedly criminal existed in each of the above-cited cases as well. It made no difference.

The assumption underlying this claim would be wrong, but understandable, if it had been made by government counsel. Coming from the Court, it is far more troubling. It appears to be a mistake that exposes flaws in the lens through which the Court is examining the issue of the potential conflict of interest and determining whether circumstances exist sufficient to require a denial of defendants' right to representation by counsel of choice. At worst, it could be viewed as a fundamental bias and prejudgment of guilt. The Court cannot base any decision on an assumption that Kendrick Frazier and Kenwyn Frazier were present for any act alleged in the indictment. The defendants have been charged with certain acts. They have not been convicted. No evidence has been presented to this Court. They are presumed innocent and the government has the burden of proving their guilt. The Court cannot assume the truth of *any* of the allegations and cannot base its determination of whether or not the defendants are entitled to certain constitutional rights based on its subjective belief in their guilt. The Court knows this and the undersigned trusts that the Court did not intend to do so here. However, the undersigned fears that the Court has allowed its decision on this issue to be influenced by assumptions that it should not have made, whether intentionally or not.

"[C]ourts will not 'assume too paternalistic an attitude in protecting the defendant from himself,' and although the defendant's choice of counsel 'may sometimes seem woefully foolish' to the court, the choice remains his." *United States v. Curcio*, 694 F.2d 14, 25 (2d Cir. 1982); *United States v. Perez*, 325 F.3d 115 (2nd Cir. 2003). In sum, the burden of establishing the necessity of disqualification is a heavy one and rests entirely upon the government. *Turner*, 594 F.3d at 951. Here, government counsel did not even request disqualification. Government

counsel did not even state that these conflicts were unwaivable. Hence, the Court's findings again and again reflect a mistake of law and procedure with respect to how these inquiries should be conducted and whether conflict waivers should be accepted.

The Court's determination that the potential conflicts it imagines are "highly likely, if not entirely unavoidable" to manifest into actual conflicts if joint representation is allowed in this case appears to be based only upon assumption and speculation. The Court failed to conduct the proper colloquy with the defendants and offer to each an explanation of the rights at issue and the consequences of waiver or lack of waiver, and yet made a determination that the proffered waivers were not made knowingly and intelligently. The Court baselessly assumed that actual conflicts are essentially inevitable in these circumstances, despite case law and a litany of cases cited above indicating otherwise. The Court cites no meaningful distinction between this case and any other where waivers were accepted and joint representation permitted, beyond baseless assumptions of what the evidence (about which it has no proof before it) shows and predictions of what defenses will or should be used and what speculative charges may be brought in the future. These determinations were a misapplication of the law and an abuse of discretion.

WHEREFORE, Kendrick Frazier and Kenwyn Frazier respectfully ask the Court to reconsider the rejection their waivers of the potential conflict of interest and reverse its disqualification of the undersigned and his associates as their counsel.

Respectfully submitted,

KENDRICK FRAZIER

KENWYN FRAZIER

By: s/ Beau B. Brindley
Attorney for Defendants

Law Offices Of Beau B. Brindley

53 West Jackson Blvd.
Suite 1410
Chicago, Illinois 60604
(312) 765-8878